IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NETWORK-1 TECHNOLOGIES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 22-1321 (MN) |
| | ) |
| UBIQUITI INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Sean Luner, Gregory Dovel, Richard Lyon, DOVEL & LUNER LLP, Santa Monica, CA – Attorneys for Plaintiff.

Jeremy D. Anderson, FISH & RICHARDSON P.C., Wilmington, DE; Neil J. McNabnay, David B. Conrad, Philip G. Brown, FISH & RICHARDSON P.C., Dallas, TX – Attorneys for Defendant.

January 14, 2025
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Defendant Ubiquiti Inc. ("Ubiquiti" or "Defendant") moves for partial summary judgment on Plaintiff Network-1 Technologies, Inc.'s ("N1" or "Plaintiff") claim of indirect infringement. (D.I. 78). The motion has been fully briefed. (D.I. 79, 86, 89).[1] For the following reasons, the Court will GRANT summary judgment.

## I.      BACKGROUND

N1 is a Delaware corporation with a principal place of business in Connecticut. (D.I. 14 ¶ 3). N1 is the owner of U.S. Patent No. 6,218,930, entitled "Apparatus and Method for Remotely Powering Access Equipment Over a 10/100 Switched Ethernet Network" ("the '930 Patent"). (*Id.* ¶¶ 1, 9). The '930 patent expired no later than March 7, 2020. (N1 Response ¶ 2).

Ubiquiti is a Delaware corporation headquartered in New York. (D.I. 18 ¶ 4). Among other products, it makes "Power over Ethernet" products, which "streamline[] the process of powering and providing data to a connected device by sending electric power over the Ethernet cable." (D.I. 81, Ex. 3 at 1). Robert Pera is Ubiquiti's CEO and a member of the Board of Directors. (N1 SOF ¶ 10; Ubiquiti Response ¶ 10). Ron Sege is also a director on Ubiquiti's Board. (N1 SOF ¶ 20; Ubiquiti Response ¶ 20). Neither are parties to this action.

N1 filed a complaint on October 6, 2022, alleging that Ubiquiti infringed the method claims of the '930 Patent. (D.I. 1). On December 30, 2022, Ubiquiti moved to dismiss the claims of indirect and willful infringement on the grounds that N1 failed to plead that Ubiquiti had pre-suit knowledge of the '930 patent. (D.I. 7). In response, on January 18, 2023, N1 amended its complaint. (D.I. 14). Ubiquiti moved to dismiss again on February 1, 2023, (D.I. 16), and the

---

[1]      Along with their briefs, the parties each submitted a concise statement of facts (D.I. 81 ("Ubiquiti SOF"); D.I. 87 at 8-11 ("N1 SOF")), and a response (D.I. 87 at 1-7 ("N1 Response"); D.I. 91 ("Ubiquiti Response")).

1

parties' briefing on the motion was completed on March 1, 2023. (D.I. 17, 19, 23). On June 23, 2023, the Court held argument on the motion to dismiss. (D.I. 81, Ex. 1).

At the hearing, the Court granted the motion as to the willfulness claim, which was unopposed, but denied it as to indirect infringement on the basis that N1 had alleged sufficient facts to survive the pleading stage. (*Id.* at 22:8-23:8). The Court noted, however, that it was a "very close call," because "there [we]re no allegations that [Ubiquiti] knew of the patent directly," and, therefore, its decision rested on N1's allegations of the '930 patent's widespread notoriety in the industry. (*Id.*). Because the briefing "suggest[ed] that there is a lack of proof rather than a lack of factual allegations" as to the knowledge element, the Court permitted the parties to negotiate bifurcated discovery and early summary judgment on the issue.[2] (*Id.* at 23:9-24:18).

From September 29, 2023 to February 20, 2024, the parties conducted discovery on Ubiquiti's knowledge of the '930 patent. (N1 Response ¶ 10). During that time, N1 served interrogatories, two rounds of document requests, and more than ten third-party subpoenas. (D.I. 37, 44, 48; N1 Response ¶¶ 11-12). Ubiquiti answered the interrogatories, conducted searches, and produced documents. (D.I. 46; Ubiquiti SOF ¶¶ 13-16; D.I. 81, Exs. 7-9). On March 1, 2024, N1 deposed Ubiquiti's corporate representative, Thomas Hildebrand. (D.I. 81, Ex. 13; D.I. 88, Ex. 6; D.I. 90, Ex. 21 (together, "the Hildebrand Tr.")). After that, N1 sought to take the apex depositions of two Ubiquiti executives: Mr. Pera and Mr. Sege.[3] (D.I. 58). Ubiquiti

---

[2]  In the interim, on February 1, 2023, Ubiquiti answered the Amended Complaint and filed its own counterclaims – two counts for declaratory judgment of non-infringement and patent invalidity. (D.I. 18). N1 answered the counterclaims on February 22, 2023. (D.I. 21).

[3]  Ubiquiti produced declarations from Mr. Pera and Mr. Sege attesting to their lack of knowledge of the '930 patent. (*See, e.g.*, D.I. 81, Ex. 10 ("Pera Decl.") ¶¶ 7-8 ("To the best of my recollection, prior to October 6, 2022, when Network-1 Technologies, Inc. filed its Complaint in this case, I had no knowledge of U.S. Patent No. 6,218,930, 'Apparatus

opposed that effort, and the parties litigated the dispute before Magistrate Judge Hatcher. (D.I. 59, 62, 65).

On March 7, 2024, Judge Hatcher denied N1's motion to compel the apex depositions of Mr. Pera and Mr. Sege on the basis that N1 made only a "minimal showing of the remote possibility of first-hand knowledge," failed to seek other, less burdensome means of retrieving the same information, and that "both Mr. Pera and Mr. Sege submitted sworn statements disclaiming any knowledge of the ['930] patent before Network-1 filed suit." (D.I. 67). Judge Hatcher additionally noted that there was "thin evidence put forward to even suggest that these individuals might have first-hand information." (*Id.*) (quoting *Brit. Telecomms. PLC v. IAC/Interactivecorp*, No. 18-366 (WCB), 2020 WL 1043974, at *8 (D. Del. Mar. 4, 2020) (granting motion to quash executive deposition for lack of "unique or personal knowledge as to relevant information")).

On April 10, 2024, Ubiquiti filed the present motion for summary judgment. (D.I. 78, 79). On April 22, N1 filed its answering brief, and, on April 29, Ubiquiti replied. (D.I. 86, 89). The Court now addresses the motion.

## II.   **LEGAL STANDARD**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of any genuine

---

and method for remotely powering access equipment over a 10/100 switched ethernet network' ('the '930 patent'). [And] Network-1 never contacted Ubiquiti, or me personally, to provide any notice of Network-1 or the '930 patent prior to the filing of the Complaint in this case."); *id.*, Ex. 12 ("Sege Decl.") ¶¶ 10-11 ("I joined Ubiquiti as a member of its Board of Directors around October 2012. I do not recall being aware of Network-1, or its patents, at that time. [And] I have no recollection of being aware of Network-1 or U.S. Patent No. 6,218,930, 'Apparatus and method for remotely powering access equipment over a 10/100 switched ethernet network' ('the '930 patent') prior to October 6, 2022, when Network-1 filed its Complaint in this case.")).

3

issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the non-movant must come forward with specific facts to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

"Material" facts are those that "could affect the outcome of the case." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citation omitted). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)-(B). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460-61.

The court must view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014). "If there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996) (cleaned up).

## III.   DISCUSSION

N1 asserts that Ubiquiti "knowingly induced others" to infringe the '930 patent, "including its customers who purchased [Ubiquiti's] Power over Ethernet products." (D.I. 14 ¶¶ 86-89). As part of that claim, N1 contends that Ubiquiti "had knowledge that the induced acts of its customers . . . constituted infringement of the '930 Patent." (*Id.* ¶ 88). In the alternative, N1 says Ubiquiti "was willfully blind to such infringement." (*Id.* ¶¶ 86-89). Ubiquiti moves for summary judgment on the basis that there is insufficient record evidence to allow a jury to find for N1 as a matter of law, and that there is no evidence that Ubiquiti knew of the '930 patent or any infringement of it. (D.I. 79 at 3-4); *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) ("Summary judgment must be granted against a party who has failed to introduce evidence sufficient to establish the existence of an essential element of that party's case, on which the party will bear the burden of proof at trial.").

Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 407 (Fed. Cir. 2018) (citation omitted). As a result, "liability for inducing infringement attaches only if the defendant knew of the patent." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). A patentee is "prohibited from collecting damages related to indirect infringement for any pre-knowledge (i.e., pre-filing) conduct." *Walker Digital LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565 (D. Del. 2012).

Ubiquiti maintains that it "first became aware of the '930 Patent when Network-1 filed the complaint in the present case," and that there is insufficient record evidence to support a finding

otherwise. (Ubiquiti SOF ¶ 8; D.I. 81, Ex. 2). After months of discovery, Ubiquiti contends that N1 has failed to come up with material communications, documents, or testimony – anything to support its theories of liability. (D.I. 79 at 4-5). Ubiquiti therefore characterizes N1's knowledge argument as "speculative." (*Id.* at 3); *see Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014). For its own part, Ubiquiti's corporate representative disclaimed any knowledge of the '930 patent during his deposition, (*see generally* Hildebrand Tr.), and Ubiquiti produced uncontested evidence in discovery showing that none of the patents owned or invented by Ubiquiti or Mr. Pera reference the '930 patent.[4] (N1 SOF ¶ 15; D.I. 90, Ex. 20); *Celotex*, 477 U.S. at 323. All of that is sufficient to support Ubiquiti's motion, because "nothing more is required [of the movant] than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways." *Exigent Tech., Inc. v. Atrana Sols., Inc.*, 442 F.3d 1301, 1309 (Fed. Cir. 2006). Thus, the burden is shifted to N1. *See Novartis*, 271 F.3d at 1046 ("Once the movant has made this showing, the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial.").

In response, N1 asserts that there is a genuine issue of material fact as to Ubiquiti's knowledge of the '930 patent for three reasons: (1) the '930 patent was publicly notorious, and, therefore, Ubiquiti must have known about it; (2) Ubiquiti's CEO learned of the '930 patent after receiving a marketing email that contained an attachment referring to it; and (3) one of Ubiquiti's directors knew about the '930 patent from his employment stints at other companies prior to joining Ubiquiti's Board. (D.I. 86 at 3, 5, 11). In the alternative, N1 says that Ubiquiti was willfully blind to the '930 patent. (*Id.* at 13-14). The Court addresses each argument in turn.

---

[4] Ubiquiti's declarations from Mr. Pera and Mr. Sege provide further support for Ubiquiti's position, although the Court finds that there is no genuine issue of material fact even without them. *See Celotex*, 477 U.S. at 324.

6

### A. Knowledge Through Public Notoriety

N1 contends that there is "a reasonable inference that Ubiquiti knew of Network-1's ['930] Patent" prior to this lawsuit. (D.I. 86 at 3). In support of that assertion, N1 says that the '930 patent was "well known in Ubiquiti's industry and widely regarded as a hugely important patent," due to "highly-publicized trials, settlements, and licensing campaigns," as well as information from N1's publicly available filings and press releases. (*Id.*). N1 expands on this point by referencing litigations against third-party industry players, royalty deals with third-party market participants, and public filings from third-party competitors – but nothing about Ubiquiti. (*Id.* at 3-4).

N1's generalized assertions of public notoriety may have been adequate at the pleading stage, but more is required on summary judgment. *See Wharton v. Danberg*, 854 F.3d 234, 244 (3d Cir. 2017). "On summary judgment, the nonmoving party must affirmatively show where in the record there exists a genuine dispute over a material fact. Speculation and conjecture may not defeat a motion for summary judgment." *Id.* (cleaned up). At this stage, N1 must rely on evidence. *TechSearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) ("[U]nsupported or conclusory averments are insufficient to avoid summary judgment where the moving party has met its initial burden."). Yet, after five months of discovery, N1 does not identify a single document or line of testimony from an Ubiquiti employee acknowledging the "hugely important" nature of the '930 patent, the "highly-publicized trials, settlements, and licensing campaigns," or information from N1's publicly available filings and press releases. *Id.*; *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984); Fed. R. Civ. P. 56(c)(1)(A). Instead, N1 offers unsupported speculation. That is insufficient to carry its burden here, because "an inference based upon a speculation or conjecture does not create a material

factual dispute sufficient to defeat summary judgment." *In re Asbestos Prod. Liab. Litig. (No. VI)*, 837 F.3d 231, 235 (3d Cir. 2016) (citation omitted).

N1 also contends that Ubiquiti must have known about the '930 patent because it was disclosed in the public filings of Ubiquiti's competitors. (D.I. 86 at 4; N1 SOF ¶¶ 7-8). Testimony from Mr. Hildebrand, however, directly refutes that notion. (Hildebrand Tr. at 30:13-32:25). Mr. Hildebrand, who offered the only evidence on this point from either side, testified that the only Ubiquiti employees to review competitor public filings were members of "the finance team, [and] they reviewed essentially top level numbers only from those earnings reports and not in detail, not complete breakdowns of things like product lines." *Id.* ("[T]hey reviewed, essentially, financial numbers only, things like inventory, profit to earnings [ratios], things like that."). N1 does not offer any contrary evidence that creates a genuine dispute of material fact, such as internal Ubiquiti communications, testimony from other deponents, or answers to interrogatories. *See Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006) ("In order to raise a genuine issue of fact, a party must submit conflicting evidence in the form of an affidavit or other admissible evidence.").

Accordingly, the Court finds that N1 has failed to raise a genuine dispute of material fact as to pre-suit knowledge of the '930 patent, let alone knowledge of infringement of that patent, based on public notoriety or filings from Ubiquiti's competitors.[5]

---

5    The seven mass-mailer marketing emails received by one Ubiquiti investor relations employee are likewise insufficient to show that the company knew about the '930 patent prior to this lawsuit. (D.I. 81, Ex. 9; D.I. 86 at 4; N1 SOF ¶ 9). There is no documentary evidence that the employee read those emails or learned of the '930 patent through them, and she was not deposed for testimony on the point. (*See* Ubiquiti SOF ¶ 14). Even if there were such evidence, however, that would still not create a genuine fact dispute, because there is no evidence that the investor relations employee is the type or level of employee through whom the company can be imputed knowledge for patent infringement purposes. *See, e.g.*, *Princeton Digital Image Corp. v. Ubisoft Ent. SA*, No. 13-335 (LPS) (CJB), 2016 WL 6594076, at *8 & n.16 (D. Del. Nov. 4, 2016) ("The record simply does not indicate that Defendants had any real level of engagement with the particular subject

B.     **Knowledge of CEO Robert Pera**

N1 next asserts that Ubiquiti CEO Robert Pera knew of the '930 patent. N1 claims that there is a genuine dispute of material fact as to whether Mr. Pera learned of the '930 patent through an email exchange with Richard Baker of New England Intellectual Property, LLC (D.I. 81, Ex.10-A ("the Baker Email")). (D.I. 86 at 5-10; N1 SOF ¶¶ 11-17).

On August 4, 2011, Mr. Baker reached out to Mr. Pera with "an unsolicited third-party sales email," attempting to sell Mr. Pera U.S. Patent No. 6,912,145 ("the '145 patent"), on behalf of that patent's owner, a company called Accton Technology Corporation ("Accton"). (D.I. 67; Baker Email at UBIQUITI_0019264-65). There is no dispute that the Baker Email was cold marketing outreach, that Mr. Pera did not know Mr. Baker, and that the '145 patent solicited in the Baker Email is "unrelated" to the '646 patent at issue here. (D.I. 67). The Baker Email included an attachment – a three-page sales proposal titled "Power-over-Ethernet Injector Patent Sales Opportunity" ("the Sales Proposal"). (D.I. 81, Ex. 11 at 1). The Sales Proposal included various sections, such as an executive summary, market information, the claims of the '145 patent, and an "offer" section. (*Id.* at 1-3). Two sentences of the Sales Proposal's market information section read: "Power-over-Ethernet technology has recently been litigated with *a different patent* in the Eastern District of Texas by Network-1 Security Solutions against CISCO, Extreme Networks, Adtran, Foundry Networks and 3Com. Network-1 settled that litigation with licenses expected to return over $100 million by 2020." (*Id.* at 2 (emphasis added)).

About six weeks later, on September 23, 2011, Mr. Pera responded, letting Mr. Baker know: "I am interested. Sorry for [the] late reply; [I] missed the email the first time." (Baker

---

matter that provides the background for the patent in question."), *report and recommendation adopted*, 2017 WL 6337188 (D. Del. Dec. 12, 2017); *Potter Voice Techs., LLC v. Apple Inc.*, 24 F. Supp. 3d 882, 886 (N.D. Cal. 2014).

Email at UBIQUITI_0019264). After several other brief email exchanges, Mr. Pera wrote, "I reviewed the ['145] patent . . . I can offer $20K USD for it." (*Id.* at UBIQUITI_0019263). Mr. Baker responded, "Thank you for making your offer. I will forward this to the people over at Accton. . . . I will let you know their response." (*Id.*). On October 31, 2011, Mr. Baker told Mr. Pera that Accton rejected his bid, and Ubiquiti did not buy the '145 patent. (*Id.* at UBIQUITI_0019257). That ended the dialogue between Mr. Pera and Mr. Baker.

N1 contends that Mr. Pera learned of the '930 patent through this exchange, due to the Sales Proposal. (D.I. 86 at 5-6). The two cited sentences in the Sales Proposal, however, do not mention the '930 patent by name, number, or standard, or even say what the '930 patent's technology does. (*See* Sales Proposal at 2; Ubiquiti SOF ¶¶ 17-18; N1 Response ¶ 18). It refers only – and opaquely – to "a different patent." (Sales Proposal at 2). As Judge Hatcher concluded, "it is not clear that the referenced patent [in the Sales Proposal] is the same as the one in this case." (D.I. 67). Instead, the Sales Proposal raises the same type of broad, generalized litigation and license information the Court has already found insufficient to confer knowledge here. *See supra*, Section III.A.

Indeed, despite contacting Mr. Baker in connection with this litigation, N1 did not provide any record evidence from him showing that he discussed the '930 patent with Mr. Pera. (*See, e.g.*, D.I. 62 at 2). The Baker Email supports only the proposition that Mr. Pera reviewed the '145 patent – not the '930 patent. (Baker Email at UBIQUITI_0019263). Mr. Hildebrand testified that he was not aware that Mr. Pera discussed the Sales Proposal or Baker Email with any Ubiquiti employee. (Hildebrand Tr. at 62:4-24). And Judge Hatcher already found on this specific point that N1's proffered "thin" support supplied only a "remote possibility of first-hand knowledge" for Mr. Pera. (D.I. 67). On the basis of the present evidentiary record, the Court agrees.

10

Therefore, "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party" on this issue, and the Court finds that no genuine dispute of material fact exists as to whether Mr. Pera knew of the '930 patent prior to the filing of this lawsuit. *Matsushita*, 475 U.S. at 587.

    C.    **<u>Knowledge of Director Ron Sege</u>**

N1 additionally argues that the evidence shows a genuine dispute of material fact as to whether Ubiquiti knew about the '930 patent through director Ron Sege. (D.I. 86 at 11). N1 points to two documents to suggest that Mr. Sege learned of the '930 patent from his employment prior to joining Ubiquiti: notice letters sent to Tropos Networks Inc. ("Tropos") in 2004 and 2008, while Mr. Sege worked there. (*See* D.I. 88, Exs. 1-L & 1-N).

According to the undisputed evidence, on January 22, 2004, N1's counsel, Mintz Levin, sent a letter to Tropos seeking to initiate a licensing deal pertaining to the '930 patent ("the 2004 Letter"). (D.I. 88, Ex. 1-L). The 2004 letter was addressed to then-Tropos CEO David Hanna. (*Id.* at 1; D.I. 81, Ex. 15). N1 offers no evidence to suggest that it was ever received or read by Mr. Sege – or even that he worked at Tropos at the time. To the contrary, N1's own CEO declaration states that the 2004 Letter was received and answered on January 27, 2004, by Tropos employee Chris Ritler, not Mr. Sege. (D.I. 88, Ex. 1 ¶ 21 ("Chris Ritler at Tropos had responded to Network-1's [2004] notice letter."); *id.*, Ex. 1-M). So does other undisputed evidence. (*See* D.I. 81, Ex. 15 ("This is Chris Ritler from Tropos Networks. We received a notice from your law firm that was directed toward David Hanna, our Chairman.")).

On August 7, 2008, N1 sent a similar licensing letter to Tropos, this time addressed to Mr. Sege in his capacity as the company's President ("the 2008 Letter"). (D.I. 88, Ex. 1-N). Once again, however, N1 identifies no record evidence that Mr. Sege interacted with the 2008 Letter or

11

otherwise learned of the '930 patent through it.[6] *See* Fed. R. Civ. P. 56(c)(1)(A). Even N1's CEO declaration stops short of saying that Mr. Sege received or read the 2008 Letter. (*See* D.I. 88, Ex. 1 ¶ 22). That is likely because, as Judge Hatcher noted, N1 "failed to even attempt to conduct discovery of the prior companies where Mr. Sege might have learned such information." (D.I. 67). Thus, neither the 2004 nor 2008 Letter constitutes evidence sufficient to connect the dots to establish that Mr. Sege knew of the '930 Patent, let alone knowledge that Ubiquiti's actions would induce others to infringe that patent. *See TechSearch*, 286 F.3d at 1372; *Wharton*, 854 F.3d at 244. Accordingly, N1 has failed to create a material issue of fact with respect to whether Ubiquiti had knowledge of the '930 patent or infringement through Mr. Sege.[7]

### D. Willful Blindness

Finally, N1 contends that Ubiquiti was willfully blind to the '930 patent. "Where pre-suit knowledge of the patents or infringement cannot be shown, a patentee may still recover pre-suit damages if the patentee can show that the infringer was willfully blind to the patent or

---

[6] Mr. Sege directly disclaims having received, read, or taken any action regarding the 2008 Letter in his declaration. (*See* Sege Decl. ¶¶ 5-6 ("I have no recollection of receiving this correspondence while working at Tropos Networks. [And] I took no action concerning Network-1 or any patent allegedly owned by Network-1 following [that] communication. . . . I also do not recall being involved in any follow up to this communication. I did not obtain or review any patents owned by Network-1 because of the foregoing communication.")). N1 does not rebut that affirmation with any contrary evidence.

[7] N1 also suggests that Mr. Sege could have learned of the '930 patent during his employment at 3Com Corporation and the Hewlett-Packard Company from 2010 to 2012. (D.I. 86 at 11). But N1 provides no evidence to support either suggestion and Mr. Sege again refutes those assertions in his affidavit. (*See* Sege Decl. ¶¶ 7-9 ("With respect to my time as COO and President of 3Com, I have been informed, in preparation for this declaration, that 3Com was sued by Network-1 in 2008. I do not recall that litigation. 3Com Corporation entered into a Merger Agreement with Hewlett-Packard as of November 11, 2009. I do not recall ever becoming aware of a company named Network-1, or its patents, because of the merger. I also do not recall ever learning of Network-1 or its patents in connection with any work I performed on behalf of Hewlett-Packard after the merger.")).

infringement." *Alarm.com, Inc. v. SecureNet Techs. LLC*, 345 F. Supp. 3d 544, 553 (D. Del. 2018). Willful blindness occurs when parties "deliberately shield[] themselves from clear evidence of critical facts that are strongly suggested by the circumstances." *Global-Tech*, 563 U.S. at 766. This standard is higher than mere negligence or recklessness. *Id.* at 769. "Therefore, a defendant is not willfully blind if it merely 'should have known' of the risk of indirect infringement." *Alarm.com*, 345 F. Supp. 3d at 553. Rather, demonstrating willful blindness requires that "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech*, 563 U.S. at 769. N1 has failed to show a genuine dispute of material fact on either prong.

First, N1 fails to point to record evidence that anyone at Ubiquiti believed that the '930 patent existed or that there was a high probability that it did. Instead, N1 recycles the same broad, generalized allegations that Ubiquiti "should have" known about the '930 patent, and that "there was no reason why . . . Ubiquiti would not want to find out" about it, based on competitors' licenses and industry litigation. (D.I. 86 at 14). Once again, that is not enough at this stage, because "[a] party may not overcome a grant of summary judgment by merely offering conclusory statements." *Moore U.S.A., Inc. v. Standard Reg. Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000).

Second, N1 does not identify any deliberate actions undertaken by Ubiquiti to avoid learning of the '930 patent. Mr. Hildebrand directly refuted such a notion multiple times in his deposition. (*See* Hildebrand Tr. at 27:1-16, 39:22-40:1). In response, N1 argues that Mr. Pera "should have investigated" based on competitor patent litigation, and since he did not, "there is a reasonable inference that Mr. Pera made a deliberate decision not to investigate." (D.I. 86 at 14). Setting aside that N1 points to no evidence of Mr. Pera's purported "deliberate decision," N1 fails to supply any reason why Mr. Pera – or anyone else at Ubiquiti – had a duty to investigate. To the

contrary, "the mere fact that a competitor with similar technology was sued for infringement cannot trigger a duty to investigate the lawsuit or otherwise be held to be willfully blind." *Alarm.com*, 345 F. Supp. 3d at 554.  And even if Ubiquiti knew about its competitors' lawsuits, a "Defendant's awareness that a competitor is being sued for infringement and a failure to investigate that lawsuit is not enough to show willful blindness." *Id.*; *see also Apeldyn Corp. v. AU Optronics Corp.*, 831 F. Supp. 2d 817 (D. Del. 2011) (rejecting willful blindness where defendant "would not . . . collect [ any] patents issued to other companies" with competing technology), *aff'd*, 522 F. App'x 912 (Fed. Cir. 2013).  Thus, it is undisputed that Ubiquiti was not willfully blind to the '930 patent.

*     *     *

N1 has failed to create a genuine dispute of material fact as to whether Ubiquiti had pre-suit knowledge of the '930 patent or its infringement.  Nor has N1 shown that Ubiquiti was willfully blind.  The Court, therefore, finds that Ubiquiti had no pre-suit knowledge of the '930 patent or of infringement, and Ubiquiti is entitled to summary judgment.  *See Novartis*, 271 F.3d at 1046.

### IV.    <u>CONCLUSION</u>

For the above reasons, the Court will GRANT Defendant's partial motion for summary judgment.  (D.I. 78.).  An appropriate Order will be entered.